# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | |
|---|---|
| **WENDELL DEAN VAN METER,** ) | |
| **NEVA JANE VAN METER,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **THE CITY OF LANETT,** ) | |
| **ALABAMA; OSCAR CRAWLEY,** ) | |
| **individually and as Mayor of the City** ) | **Case No.: 3:06-CV-583-MHT** |
| **of Lanett; KYLE MCCOY,** ) | |
| **individually and as Lanett City** ) | |
| **Councilman; JOHN DUSKIN,** ) | |
| **individually and as Lanett City** ) | |
| **Councilman; MIKE YARBROUGH,** ) | |
| **individually and as Lanett City** ) | |
| **Councilman; JOEL G. HOLLEY,** ) | |
| **individually and as Lanett City** ) | |
| **Manager** ) | |
| ) | |
| **Defendants.** ) | |

## NARRATIVE SUMMARY OF UNDISPUTED FACTS AND BRIEF OF APPLICABLE LAW

The Defendants submit this Narrative Summary of Undisputed Facts and Brief of Applicable Law in support of their Motion for Summary Judgment filed simultaneously herewith.

## NARRATIVE SUMMARY OF UNDISPUTED FACTS

This matter arises out of the termination of Wendell Dean Van Meter from his position as a police lieutenant with the City of Lanett Police Department. Mr. Van Meter took possession of at least five City employees' personnel files while the City's Fire Department was in the process of destroying those and other files. See Deposition of Wendell Dean Van Meter, attached hereto

as Exhibit A, ¶ 15 line 7 through ¶ 18 line 8.  Mr. Van Meter took the files without permission.

Exhibit A, ¶ 21 lines 14 – 18.  On November 7, 2005, Mr. Van Meter met with City Manager Joe

Holley regarding Mr. Van Meter's possession of the files, and Mr. Van Meter turned over to Mr.

Holley the files Mr. Van Meter still had in his possession. Exhibit A ¶ 30 line 7 through ¶ 32 line

10.

     The following day, Mr. Van Meter was placed on administrative leave. Id.  Mr. Van

Meter remained on administrative leave while waiting on the conclusion of the investigation into

the matter. Exhibit A, ¶ 33 lines 2 – 11.  About a week into the administrative leave, Mr. Van

Meter gave a statement to Teddy Morris, an investigator retained to investigate the matter.

Exhibit A, ¶ 32 line 11 through ¶ 33 line 1.

     After having been on administrative leave for approximately two weeks, City of Lanett

Police Chief Docimo conducted a meeting with Mr. Van Meter in which he told Mr. Van Meter

he was going to recommend Mr. Van Meter be terminated from his position. Exhibit A ¶ 33 lines

12 – 18.  Chief Docimo told Mr. Van Meter he could appeal his recommendation to the City

Manager, Joel Holley. ¶ 33 line 14 – 18.  On December 7, 2005, Mr. Van Meter's attorneys

accompanied him to a meeting before the City Manager regarding his appeal. Exhibit A, ¶ 33

line 19 through ¶ 34 line 18.  City Manager Holley told Mr. Van Meter and his attorneys that he

would try to have a decision to them within 24 hours, and that Mr. Van Meter would have five

working days to appeal his decision. Exhibit A, ¶ 34 line 19 through ¶ 35 line 2. Within 24

hours, Mr. Van Meter received City Manager Holley's decision that Mr. Van Meter be

terminated effective immediately. Exhibit A, ¶ 36 line 22 through ¶ 38 line 4.

     On December 14, 2005, the Mayor and Council of the City of Lanett held a "Due Process

Hearing" in which the facts of Mr. Van Meter's matter were discussed. See Plaintiffs'

2

Complaint, ¶ 8; see also Exhibit A, ¶ 45 line 2 through ¶ 46 line 1.  Mr. Van Meter attended the

Due Process Hearing represented by counsel. See Plaintiffs' Complaint, ¶ 9.  Mr. Van Meter

testified at the hearing, and Mr. Van Meter's attorneys called at least one witness to testify.

Exhibit A, ¶ 46 lines 3 – 20.  The Council did not hold a vote during the Due Process Hearing,

but the Council announced a vote of 4 to 2 in favor of termination five days later during the next

regularly scheduled meeting.  Mr. Van Meter was present at the December 19, 2005, meeting

during which the vote was announced. Exhibit A, ¶ 48 line 2 through ¶ 51 line 1.

     The City of Lanett paid Mr. Van Meter through December 19, 2005, which was the same

day the Council's 4 to 2 vote was officially recorded. See Exhibit B, Employer Certification

("Last day for which employee is paid: 12-19-05").

     Mr. and Mrs. Van Meter filed the above-styled cause alleging (Count I) Wrongful

Termination, (Count II) Deprivation of Civil Rights, (Count III) Intentional Infliction of

Emotional Distress, (Count IV) Defamation, (Count V) Loss of Consortium, and (Count VI)

Negligence. See Plaintiffs' Complaint.

## BRIEF OF APPLICABLE LAW

### Summary Judgment Standard

     Under FED.R.CIV.P. 56(c) summary judgment is proper "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party

moving for summary judgment "always bears the initial responsibility of informing the district

court of the basis for its motion, and identifying those portions of the 'pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it

believes demonstrate the absence of a genuine issue of material fact." Id. at 323. The movant

may meet this burden by presenting evidence showing there is no dispute of material fact, or by

showing that the nonmoving party has failed to present evidence in support of some element of

its case on which it bears the ultimate burden of proof. Id. at 322-324. If the movant succeeds in

demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to

establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's

case exists. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir.1993); see also

FED.R.CIV.P. 56(e). ("When a motion for summary judgment is made and supported ··· an

adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his]

response ··· must set forth specific facts showing that there is a genuine issue for trial."). What is

material is determined by the substantive law applicable to the case. Anderson v. Liberty Lobby

Inc., 477 U.S. 242, 248 (1986). A dispute of material fact "is 'genuine' … if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. The non-

movant "must do more than simply show that there is some metaphysical doubt as to the material

facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U .S. 574, 586 (1986). Rather, the

non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly

supported motion for summary judgment. Anderson, 477 U .S. at 257. If the non-movant's

response consists of nothing more than conclusory allegations, the court must enter summary

judgment for the movant. See Holifield v. Reno, 115 F.3d 1555, 1564 n. 6 (11th Cir.1997);

Harris v. Ostrout, 65 F.3d 912 (11th Cir.1995). However, if there is a conflict in the evidence,

"the [plaintiff's] evidence is to be believed and all reasonable inferences must be drawn in his

favor." Anderson, 477 U.S. at 255; Molina v. Merritt & Furman Ins. Agency, 207 F.3d 1351,

1356 (11th Cir.2000). After the nonmoving party has responded to the motion for summary

judgment, the court must grant summary judgment if there remains no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c).

1.     **The Defendants Did Not Wrongfully Terminate the Plaintiff.**

The Defendants did not wrongfully terminate the Plaintiff from his position with the City

of Lanett, because the City provided the Plaintiff with a pretermination hearing before he was

finally terminated from his employment.  "[T]he dismissal of a public employee who is entitled

to a pretermination hearing, without such a hearing, is a wrongful act constituting a tort under

Alabama law."  Hardric v. City of Stevenson, 843 So.2d 206, 210 (Ala. Civ. App. 2002) (citing

City of Gadsden v. Harbin, 398 So.2d 707, 708 (Ala. Civ. App. 1981) (emphasis added).  The

City of Lanett provided Mr. Van Meter with a pretermination hearing.  Indeed, Mr. Van Meter

was not terminated until December 19, 2005, a full five days after the hearing.

The Plaintiff alleges the process used to terminate his employment "was in violation of

Section 11-43-21(b)(3) Code of Alabama 1975, as amended[,] and the City of Lanett Personnel

Policy," because the City Manager does not have the authority to terminate police officers. See

Plaintiff's Complaint ¶¶ 8 – 10.  Mr. Van Meter's allegation is based on City Manager Holley's

decision that Mr. Van Meter be terminated effective immediately, rather than merely

recommending that Mr. Van Meter be terminated immediately. Exhibit A, ¶ 38 line 11 through ¶

40 line 7. This subtle nuance is the basis for Mr. Van Meter's claim for wrongful termination.

In addition, Mr. Van Meter claims the City lied about the complaints against him. See

Plaintiff's Complaint ¶ 8.  The City based its decision to terminate Mr. Van Meter because of

Mr. Van Meter's "Theft of City Property" and "Conduct Unbecoming of an Officer." See Id.

However, Mr. Van Meter alleges "[s]aid charges were actually motivated by the fact that Mr.

5

Van Meter had supported Defendant Crawley's opponent during his campaign for mayor, [sic] and had been openly critical of certain policies and practices of Mayor Crawley and the City of Lanett." Id. (emphasis added). Mr. Van Meter does not dispute the veracity of the complaints against him; he only challenges the motivation behind them.

Despite Mr. Van Meter's contention to the contrary, Mr. Van Meter was not terminated when City Manager Holley suggested otherwise. As the Plaintiff correctly points out in his Complaint, the City Manager is not given the statutory authority to fire municipal employees. See Plaintiff's Complaint, ¶ 8. Therefore, City Manager Holley's suggestion that Mr. Van Meter be terminated effective immediately could not sufficiently operate to terminate Mr. Van Meter. Mr. Van Meter implicitly recognized this fact when he accepted a paycheck through December 19, 2005, which was a full twelve days after City Manager Holley reached his decision.

Mr. Van Meter and the Defendants all took actions consistent with Mr. Van Meter still being employed by the City of Lanett after City Manager Holley's decision on December 7, 2005. Seven days later, the City of Lanett convened a Due Process Hearing in which Mr. Van Meter was represented by counsel and was able to both testify and call witnesses on his behalf. On December 19, five days after the Due Process Hearing, the City of Lanett convened a second time to discuss the Van Meter decision and record the Council's votes.

On December 19, 2005, after Chief of Police Docimo, City Manager Holley, Mayor Crawley, and the City of Lanett Council had all weighed in on the matter, Mr. Van Meter was fired. Also on that same date, Mr. Van Meter was credited with his last day's pay.

The City of Lanett did not wrongfully discharge the Plaintiff. The City of Lanett investigated the claims against the Plaintiff and found them to be true. Because the claims constituted terminable offenses, the Chief of Police recommended Mr. Van Meter be terminated.

6

Consistent with the policies and procedures available to him, Mr. Van Meter appealed the Chief's decision to the City Manager.  When the City Manager did not disagree with the Chief's recommendation, Mr. Van Meter appealed the decision to the City Council.  The City Counsel held a Due Process Hearing and later voted 4 to 2 to terminate the Plaintiff.  After the Council's vote, the City of Lanett took Mr. Van Meter off of the City's payroll.  Because Mr. Van Meter received a pretermination hearing before he was terminated and removed from the City's payroll, he was not wrongfully discharged.

Therefore, there exists no genuine issue of material fact, and the Defendants respectfully request that this Honorable Court grant summary judgment in favor of the Defendants with respect to the Plaintiff's claim for wrongful termination.

**2.**      **The Defendants Did Not Deprive the Plaintiff of His Civil Rights.**

The Defendants did not deprive the Plaintiff of his civil rights to free speech, political affiliation, or due process of law.  In Paragraph 11 of the Plaintiff's Complaint, titled "Count II," the Plaintiff actually alleges two separate causes of action under the heading "Deprivation of Civil Rights."  First, the Plaintiff asserts the Defendants deprived the Plaintiff of his First Amendment rights to free speech and political affiliation.  Second, the Plaintiff asserts the Defendants deprived the Plaintiff of his Fifth and Fourteenth Amendment rights to due process of law.  Because these are actually separate causes of action lumped together in "Count II," the Defendants will address each cause of action separately, *infra*.

A.      The Defendants did not deprive the Plaintiff of his First Amendment rights to free speech and political affiliation.

The Defendants did not deprive the Plaintiff of his First Amendment rights.  Although the Plaintiff frames this cause of action in terms of his rights being "deprived," what he appears to

be attempting to assert is a claim for <u>retaliation</u> for his speech under 42 U.S.C. § 1983.[1]  In order

establish a First Amendment claim of retaliation under § 1983, an employee must show that: "(1)

the speech involved a matter of public concern; (2) the employee's free speech interests

outweighed the employer's interest in effective and efficient fulfillment of its responsibilities;

and (3) the speech played a substantial part in the adverse employment action." <u>Cook v.

Gwinnett County School District,</u> 414 F.3d 1313, 1318 (11th Cir.2005).

    Mr. Van Meter is unable to prove that his speech is even remotely causally connected to

the City's decision to terminate him, much less that his speech "played a substantial part" in his

termination.  Indeed, the only evidence Mr. Van Meter has proffered that suggests the Mayor

was even aware that Mr. Van Meter said anything is hearsay and conjecture from two officers.

The Plaintiff stated in his deposition that two officers told him Mayor Crawley <u>wasn't going to

help him</u> because Van Meter didn't help the mayor during the election. See Exhibit A, ¶ 51 line 6

through line 12 (emphasis added).  Even if Mayor Crawley said he "wasn't going to help" Mr.

Van Meter, that statement alone does not say anything to suggest that Mr. Van Meter was

terminated for his speech.  If anything, it proves the Defendants' point that Mr. Van Meter <u>was

not</u> terminated for his speech, and that Mayor Crawley wasn't going to stop Mr. Van Meter from

being terminated for stealing files and committing conduct unbecoming of an officer.  Mayor

Crawley is under no duty to help Mr. Van Meter from being fired for lawful purposes; certainly,

his insistence that he was not going to help him doesn't rise to the threshold of "playing a

substantial part" in his termination.

    Other than those two officers' statements, the Plaintiff admits to having no other

---

1 The Plaintiff's Complaint states "The deprivation of Plaintiff Van Meters [sic] First Amendment rights were
proximately caused by the Defendants actions, in that his termination from employment was motivated by his

evidence that Mayor Crawley has ill will or ill feelings toward him. See Exhibit A, ¶ 59 line 1 through 6.  Further, the Plaintiff readily admits that Mayor Crawley has never said or done anything to the Plaintiff to indicate he disliked the Plaintiff. See Exhibit A, ¶ 51 line 19 through ¶ 52 line 10.

Even if this Honorable Court finds that Mayor Crawley's statement that he "wasn't going to help" demonstrates that Mr. Van Meter's speech played a substantial part in his termination that is not the end of the inquiry.  At that point, the burden then shifts to the employer to show that it would have made the same decision even absent the protected speech. Id.

The City would have terminated the Plaintiff regardless of any speech he may have directed against Mayor Crawley.  The City determined, after a thorough investigation, that the Plaintiff stole City personnel files, retained them in his possession, gave some of them to other employees, and did not have permission to do so.  The Chief of Police ordered an investigation and recommended that the Plaintiff be terminated.  That recommendation was appealed to the City Manager, who recommended the Plaintiff be terminated effective immediately.  That decision was appealed to the City Council, who voted four to two to terminate the Plaintiff.  The Mayor, the alleged target of Mr. Van Meter's speech, voted in favor of termination.  However, the Mayor was the final participant to cast a vote, meaning the vote was already three to two in favor of termination before the Mayor voted.  See Exhibit A, ¶ 56 lines 9 through 15.

Finally, even if this Court finds that the Plaintiff has met the above burdens as they apply to most public employees, it is important to note that police departments are given more latitude in responding to the speech of police officers.  A police officer is considered "part of a quasi-military organization." Oladeinde v. City of Birmingham, 230 F.3d 1275, 1293 (11th Cir.2000)

---

making critical statements about Defendant Crawley and his administration." See Plaintiff's Complaint, ¶ 11.

(citing Hansen v. Soldenwagner, 19 F.3d 573, 577 (11th Cir.1994)). "In a law enforcement agency, there is a heightened need for order, loyalty, morale and harmony, which affords a police department more latitude in responding to the speech of its officers than other government employers." Id. (emphasis added). As a result, the City should be given deference to take the appropriate measures to ensure the "heightened need for order, loyalty, morale and harmony" are not disrupted.

Therefore, the Defendants respectfully request that this Honorable Court grant summary judgment in favor of the Defendants with respect to the Plaintiff's claims that his First Amendment rights were violated.

B.    The Defendants did not deprive the Plaintiff of his right to due process of law.

The Plaintiff has inappropriately asserted a cause of action against the Defendants for allegedly depriving him of his right to procedural due process.[2]  However, even if the Plaintiff has properly asserted a cause of action against the Defendants for deprivation of procedural due process, the Defendants provided the Plaintiff with procedural due process. Finally, even if the Defendants did not provide the Plaintiff procedural due process, the Plaintiff is unable to recover damages as prayed for in his Complaint.

In his Complaint, the Plaintiff alleges his rights were deprived due to (1) "the Defendants failure to provide [the Plaintiff] with an unbiased hearing on the facts" and (2) by Mayor Oscar Crawley "refusing to recuse himself from the proceedings…." See Plaintiff's Complaint, ¶ 11.

i.    The Plaintiff has inappropriately asserted a cause of action against the

_____

2 The Plaintiff alleges a deprivation of due process under the Fifth and Fourteenth Amendments to the United States Constitution. The Defendants wish to stress that the Fifth Amendment applies "only when the federal government seeks to deny a liberty or property interest." Knoetze v. United States, 634 F.2d 207, 211 (5th Cir.), cert. denied, 454 U.S. 823 (1981) (citing Perry v. Sindermann, 408 U.S. 593 (1972)) (emphasis added). Therefore, despite the Plaintiff's Complaint stating otherwise, the Plaintiff can only assert a cause of action against state employees for

<u>Defendants.</u>

The Plaintiff has inappropriately asserted a cause of action against the Defendants for allegedly depriving him of his right to procedural due process.  "[P]rocedural due process violations do not become complete 'unless and until the state refuses to provide due process." <u>Id</u>. (quoting <u>Zinermon v. Burch</u>, 494 U.S. 113, 123 (1990).  "[I]n the case of an employment termination case, due process [does not] require the state to provide an impartial decisionmaker at the pre-termination hearing.  The state is obligated only to make available 'the means by which [the employee] can receive redress for the deprivations [satisfying the requirements of due process].'" <u>McKinney v. Pate</u>, 20 F.3d 1550 (11th Cir. 1994) (citing <u>Schaper v. City of Huntsville</u>, 813 F.2d 709, 715-16 (5th Cir. 1987) (quoting <u>Parratt v. Taylor</u>, 451U.S. 527, 543 (1981)). <u>Id</u>, at 1562.  The Plaintiff asserts that the

 "[E]ven if [the Plaintiff's] allegations [of bias] are true, the presence of a satisfactory state remedy mandates that [a court] find that no procedural due process violation occurred." <u>Id</u>, at 1564; <u>see</u> <u>also</u> <u>Tinney v. Shores</u>, 77 F.3d 378, 382 (11th Cir.1996) ("The [plaintiffs] ... failed to state a valid procedural due process claim because they [did] not allege[ ] that Alabama law provided them with an inadequate post-deprivation remedy.").  The precedent established by <u>Parratt</u> and its progeny are easily applied to present matter: even if the Plaintiff suffered a procedural deprivation at the hands of a biased pretermination hearing, "he has not suffered a <u>violation</u> of his procedural due process rights unless and until the State of [Alabama] refuses to make available a means to remedy the deprivation." <u>McKinney</u>, 20 F.3d at 1653.  Even if the pretermination hearing was biased, "under <u>Parratt</u>, only the state's refusal to provide a means to correct any error resulting from the bias would engender a procedural due process violation." <u>Id</u>.

_____

deprivation of due process under the <u>Fourteenth</u> Amendment.

In <u>McKinney</u>, the plaintiff filed a cause of action alleging deprivation of due process rights at the hands of state actors. <u>Id.</u>  Like the Plaintiff in the present matter, the plaintiff in <u>McKinney</u> also chose to allege a cause of action under the Fourteenth Amendment, which made it necessary for the matter be heard in federal court. <u>Id.</u> The Eleventh Circuit, sitting <u>en</u> <u>banc</u>, held that a plaintiff cannot state a valid constitutional claim if the state provides an adequate process to remedy the alleged due process violation. <u>Id.</u>

The Plaintiff's remedy through the state is adequate.  The Alabama state courts and causes of action under state law possess the power to remedy the Plaintiff's loss both in terms of damages and equitable relief. <u>Wallace v. City of Montgomery</u>, 956 F.Supp. 965, 981 (M.D. Ala. 1996) ("[T]he State of Alabama provides adequate post-deprivation remedies.").  As a result, the Alabama procedures satisfy procedural due process and alleviate any deprivation the Plaintiff may have suffered at the hands of the board.

Therefore, the Plaintiff does not state a valid cause of action for the violation of a federal due process violation.  As this Court stated in <u>Wallace</u>, "The Alabama Courts are empowered to overturn the … City-Council['s] … decision…. Accordingly, <u>to the extent that the plaintiff's complaint sets forth procedural due process claims pursuant to the Fourteenth Amendment, the court finds that summary judgment is due to be granted</u>.  <u>Wallace</u>, 956 F.Supp. at 981 (emphasis added).  As a result, the Defendants respectfully request that this Honorable Court grant summary judgment with respect to the Plaintiff's due process claims pursuant to the Fourteenth Amendment.

ii.    <u>The Defendants provided the Plaintiff with the all of the process required.</u>

Even if it is decided that the Plaintiff has properly asserted a cause of action for

deprivation of procedural due process rights, the Defendants did not deprive the Plaintiff of his right to procedural due process, because the Defendants provided the Plaintiff with notice of the charges against him, an explanation of the Defendants' evidence, and an opportunity for the Plaintiff to present his side of the story.  The Plaintiff does not dispute these facts.  Rather, the Plaintiff alleges his rights were deprived due to (1) "the Defendants failure to provide [the Plaintiff] with an unbiased hearing on the facts" and (2) by Mayor Oscar Crawley "refusing to recuse himself from the proceedings…." See Plaintiff's Complaint, ¶ 11.

Under the Fourteenth Amendment's procedural-due-process standard, all that is required in a pretermination hearing is "[1] oral or written notice of the charges against [the employee], [2] an explanation of the employer's evidence, and [3] an opportunity [for the employee] to present his side of the story." Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546 (1985).  Immediately following the standard, the Supreme Court stated, "to require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Id.

The Defendants provided to the Plaintiff the three federal due process requirements stated in Cleveland Board of Education.  Mr. Van Meter met with the Defendants on a number of occasions prior to the City Council's due process hearing.  During those meetings, Mr. Van Meter was explained the charges and evidence against him.  Further, at the City Council's hearing, the Council gave Mr. Van Meter an opportunity to testify and call witnesses on his behalf.  After that hearing, the City Council voted 4 to 2 to terminate the Plaintiff.  These facts are undisputed by the Plaintiff.

The Plaintiff has not provided substantial evidence that the Mayor was biased.  Instead, the only evidence the Plaintiff has proffered is grounded in hearsay and conjecture. The Plaintiff

13

stated in his deposition that two officers told him Mayor Crawley wasn't going to help him because Van Meter didn't help the mayor during the election. See Exhibit A, ¶ 51 line 6 through line 12. Other than those two officers' statements, the Plaintiff admits to having no other evidence that Mayor Crawley has ill will or ill feelings toward him. See Exhibit A, ¶ 59 line 1 through 6. Further, the Plaintiff readily admits that Mayor Crawley has never said or done anything to the Plaintiff to indicate he disliked the Plaintiff. See Exhibit A, ¶ 51 line 19 through ¶ 52 line 10.

Therefore, the Defendants did not deprive the Plaintiff of his right to procedural due process, and the Defendants are entitled to judgment as a matter of law.

iii.    The Plaintiff is barred from recovering compensatory damages.

Finally, regardless of whether the Defendants are found to have violated the Plaintiff's procedural due process rights, the Plaintiff is barred from recovering the compensatory damages he seeks in his Complaint. "If the claimant elects not to seek a remedial hearing, no compensatory damages may be awarded either." McKinney, 20 F.3d at 1558 n. 11. "In an employment case, the claimant typically seeks reinstatement and a properly conducted pre-termination hearing." Id. However, in the present matter, the Plaintiff's Complaint seeks only "compensatory damages in the amount of $500,000 plus punitive damages in an amount to be determined by the trier of fact that is mete and proper under the circumstances." See Plaintiff's Complaint, ¶ 15. Since the Plaintiff elected not to seek a remedial hearing, "no compensatory damages may be awarded either."

**3.    The Defendants Did Not Intentionally Inflict Emotional Distress Upon the Plaintiff.**

The Defendants did not intentionally inflict emotional distress upon the Plaintiff when they terminated his position with the City. To be actionable under the tort of outrage, the

14

conduct involved must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and … be regarded as atrocious and utterly intolerable in a civilized society." American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala.1980) (citing Restatement (Second) of Torts § 46, Comment d., at 73 [1965]).  In the present matter, the Plaintiff admits that he possessed stolen personnel files, but he insists that the Defendants' true motivation for terminating his position with the police department was because the Plaintiff had previously spoken ill of the mayor.

Even if the Plaintiff's assertions are true, terminating a person for possessing stolen personnel files and committing conduct unbecoming of a police officer are valid reasons for terminating his position.  Therefore, even if the Defendants disliked the Plaintiff and were motivated by that dislike to pursue an action they might not have ordinarily pursued does not rise to the level of going "beyond all possible bounds of decency," and it is not "atrocious and utterly intolerable in a civilized society."  Indeed, terminating a police officer for possessing stolen property helps upholds, rather than destroy, a civilized society.

Therefore, there exists no genuine issue of material fact, and the Defendants request that this Honorable Court grant summary judgment with respect to the Plaintiff's cause of action alleging intentional infliction of emotion distress.

**4.**	**The Defendants Did Not Defame the Plaintiff.**

The Defendants did not defame the Plaintiff by accusing him of being in possession of stolen personnel files and terminating his employment.  "The elements of a cause of action for defamation are: 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence; and 4) either actionability of the statement irrespective of special harm or the existence of special

harm caused by the publication of the statement." <u>Drill Parts & Service Co. v. Joy Mfg. Co.</u>, 619 So.2d 1280, 1289 (Ala.1993) (quoting <u>McCaig v. Talladega Publ'g Co.</u>, 544 So.2d 875, 877 (Ala.1989)) (emphasis added).

"In defamation actions, the only absolutely privileged communications recognized under the law are those made during legislative or judicial proceedings … or contained in legislative acts of this state which are made under authority of law. It is equally well-established that whether the communication was privileged or not by reason of its character, or the occasion on which it was made, is a question of law to be decided by the court. <u>Butler v. Town of Argo</u>, 871 So.2d 1 (Ala. 2003) (citations omitted) (quoting <u>Walker v. Majors</u>, 496 So.2d 726, 730 (Ala.1986)). "This privilege has been extended to members of local legislative bodies, such as a city council." <u>Id.</u>

The Defendants investigated the Plaintiff and held a hearing pursuant to the policies and procedures of the City of Lanett. That investigation resulted in a hearing before the City Council and an ultimate determination that the Plaintiff did commit conduct unbecoming of a police officer and possessed stolen personnel files. Therefore, as a matter of law, the communications were privileged.

Even if this Court finds that the communication was not privileged, the truth of the communication is a complete defense to defamation. <u>Deutcsh v. Birmingham Post Co.</u>, 603 So.2d (Ala. 1992) 910, 911. The Defendants investigated the charges against the Plaintiff and found the matters to be true. Further, the charges were brought before the Council, and the Council found the charges to be true. Therefore, the Defendants, by stating that the Plaintiff was guilty of the two charged offenses, were speaking the truth. Indeed, the Plaintiff was guilty of the two offenses as determined by the Council.

Therefore, there remains no genuine issue of material fact, and the Defendants respectfully requests that this Honorable Court grant summary judgment with respect to the cause of action alleging defamation.

**5.     The Defendants Did Not Cause the Plaintiffs to Lose Consortium.**

The Defendants did not cause the Plaintiffs to lose consortium, because the Defendants did not commit any of the torts alleged by the Plaintiffs. Loss of consortium claims are derivative claims. Georgia Power Co. v. Partin, 727 So.2d 2, 6 (Ala. 1998). Therefore, if the Defendants are found not to be liable for the underlying torts, then a Plaintiff cannot be successful on a loss of consortium claim.

In the present matter, the Plaintiffs have asserted a loss of consortium claim against the Defendants for the alleged loss of consortium between the marital partners. However, as demonstrated, supra and infra, the Defendants are not liable for any torts against the Plaintiff. Therefore, the Plaintiffs' loss of consortium claim must automatically fail.

As a result, the Defendants respectfully request that this Honorable Court grant summary judgment in favor of the Defendants with respect to the Plaintiffs' loss of consortium claim.

**6.     The Defendants Were Not Negligent.**

The Defendants were not negligent with respect to the four assertions of negligence the Plaintiff lumps into Count VI of his Complaint. Specifically, the Plaintiff alleges (1) the City of Lanett was negligent in failing to establish a written policy that would ensure due process of law was afforded to the Plaintiff; (2) Defendants Crawley, McCoy, Duskin, and Yarbrough were negligent for failing to prevent Defendant Holley from implementing "the unauthorized termination" of the Plaintiff; (3) Defendants Crawley, McCoy, Duskin, and Yarbrough were also negligent for "failing to 'correct' the unauthorized actions" of Defendant Holley during the due

17

process hearing; and (4) the City of Lanett was negligent for failing to "establish a policy to comply with statutory requirements as to the proper handling and destruction of governmental records."

    A.    <u>The City of Lanett was not negligent.</u>

The City of Lanett is not liable for negligence to the Plaintiff. "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty…." <u>Ala. Code</u> (1975) § 11-47-190. "To construe that language to include an action for damages for errors made in quasi judicial decisions would be to expand the words beyond their normal meaning." <u>Ott v. Everett</u>, 420 So.2d 258 (Ala. 1982). "<u>Until the legislature chooses to expand the liability of municipalities to include damages for wrongful decision making</u>, this court will continue to limit such liability to only those injuries caused by "neglect, carelessness or unskillfulness." <u>Id.</u> Therefore, the Plaintiff cannot assert a cause of action for negligence against the City of Lanett, because all of the Plaintiff's complaints derive from the City's decision-making powers.

Even if the Plaintiff's allegations of negligence on the part of the City of Lanett are not considered to be derived from the City's decision-making powers, the City was still not negligent with respect to the allegations in the Plaintiff's complaint. The Plaintiff alleges the City of Lanett was negligent, because the City (1) did not have a policy ensuring the Plaintiff received due process and (2) did not have a policy governing the destruction of personnel files. However, the City does not have a duty to enact policies with respect to either function. While the City certainly is not permitted to violate the due process of employees, there is no statutory

or common law duty to adopt a policy ensuring due process. With respect to adopting a policy to governing the destruction of personnel files, there is no statutory or common law duty to do so. Simply put, the Plaintiff seeks to allege negligence on the part of the City for failing to do something they were under no obligation to do.

Therefore, there is no genuine issue of material fact, and the Defendant respectfully requests that this Honorable Court grant summary judgment in favor of the Defendant with respect to the Plaintiff's claim against the City of Lanett for negligence.

B.    Defendants Crawley, McCoy, Duskin, and Yarbrough were not negligent.

Defendants Crawley, McCoy, Duskin, and Yarbrough were not negligent in terminating the Plaintiff. The Plaintiff alleges these Defendants were negligent for (1) terminating the Plaintiff and (2) failing to "correct" Defendant Holley's actions.

It should be stressed that Defendant Crawley is the Mayor the City of Lanett and Defendants McCoy, Duskin, and Yarbrough are members of the Lanett City Council. Therefore, what the Plaintiff is alleging is that the Mayor and members of the Council are negligent for voting for the Plaintiff's termination. The Plaintiff's allegations amount to re-characterizing their acts of voting for the Plaintiff's termination as negligence.

The Defendants were city officials acting in the scope of their authority. "City officials are absolutely immune from suits attacking their legislative judgment. Tutwiler Drug Co. v. City of Birmingham, 418 So.2d 102 (Ala.1982). City officials acting within the general scope of their authority have a qualified or discretionary immunity and are not subject to tort liability for an administrative act or omission. Taylor v. Shoemaker, 605 So.2d 828 (Ala.1992), adopting Restatement (Second) of Torts § 895D (1979). The Restatement provides that 'A public officer acting within the general scope of his authority is not subject to tort liability for an

19

administrative act or omission if … he is immune because engaged in the exercise of a discretionary function.' Thus, as a general rule, city officials are immune from suit unless they violate clearly established law.

    As discussed a number of times above, the Defendants were acting within the scope of their authority when they voted to terminate the Plaintiff. The charges against the Plaintiff were investigated by an investigator. That investigation concluded the Plaintiff committed the acts with which he was charged. That investigation was reviewed by the Chief of Police, who agreed with the results of the investigation and recommended the Plaintiff be terminated. That recommendation was appealed to the City Manager, who agreed with the recommendation and believed the Plaintiff's position should be terminated. Finally, the City Council held a hearing in which the Plaintiff was permitted to testify and call witnesses on his behalf. All of the foregoing information was before the Defendants when they exercised their legislative judgment and acted within the scope of their employment during a second hearing on the matter, wherein the Defendants voted to terminate the Plaintiff.

    Therefore, there is no genuine issue of material fact, and the Defendants respectfully request that this Honorable Court grant summary judgment with respect to the Plaintiff's claim for negligence against the Defendants.

                                   /s/ T. Randall Lyons
                         T. RANDALL LYONS (LYO006)
                         Attorney for Above-Named Defendants

OF COUNSEL:
Webster, Henry, Lyons & White, P.C.
P.O. Box 239
Montgomery, AL 36101
334-264-9472
334-264-9599

20

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the following on this the 13th day of February, 2007 via United States Mail, postage prepaid:

James C. Ingram, Jr.
Smith & Ingram
P.O. Box 285
Lanett, AL 36863

William G. Harris
358 North Alston Street
Foley, AL 36535

_____/s/ T. Randall Lyons_____
OF COUNSEL