b.  Maximum due process protection will be provided to an

        employee in any dismissal proceedings.

    c.  An employee may appeal his/her dismissal in accordance with

        SECTION IX GRIEVANCE PROCEDURE.

## SECTION VII

### DISCIPLINARY ACTIONS

A.  **GENERAL.** Employees will be disciplined only for violation of
established rules and regulations and/or for the good of the
service. No employee will be disciplined for any authorized
political activity. Each supervisor will make every effort to
determine why an employee failed to observe proper conduct and to
initiate corrective actions when appropriate. All discipline will
be taken to correct the employee's performance and behavior and
will be fair, prompt, and certain.

B.  **TYPES OF DISCIPLINE.** For unsatisfactory performance of duties or
other just causes, any employee, regardless of employment class,
may be subject to the following disciplinary actions by his/her
supervisor:

    1.  Formal Counseling. At the first need for discipline, the
supervisor will discuss the problem with the employee so that
both may offer suggestions to deal with the problem. Such
formal counseling will be in writing and a copy will be
included in the employee's personnel file.

EXHIBIT

1

2. Written Warning. For repeated or continual employee offenses the supervisor will issue the employee a written warning. The report will state the reasons for the warning and inform the employee that the next disciplinary step could be suspension. A copy of all written warnings will be forwarded to the personnel officer for inclusion in the employee's personnel file.

3. Suspension Without Pay. The city manager, upon recommendation from the department head, may suspend an employee without pay for a period not to exceed thirty (30) days. A due process hearing will be held prior to the effective date of the suspension.

4. Demotion. The city manager, upon recommendation from the department head, may demote an employee for insufficient performance of his/her duties, for disciplinary reasons, or for any other good cause. A due process hearing will be held prior to the effective date of the demotion.

5. Dismissal from Service. The city manager, upon recommendation from the department head, may dismiss any employee so long as the dismissal is in accordance with the intent of this section. A due process hearing will be held prior to the effective date of the dismissal.

C. CLASSIFICATION OF OFFENSES. Employee offenses are grouped below, with the appropriate disciplinary procedures to be followed, so that discipline may be administered impartially and fairly throughout the city. These offenses and procedures as described

22

are neither all inclusive nor automatic. Supervisors are permitted and expected to treat individual situations according to the circumstances and facts involved.

1. Group One Offenses.

   a. Such offenses include, but are not limited to, the areas listed below:

     (1) failure to give proper notice of an absence which could be anticipated;

     (2) irregular attendance and/or excessive absenteeism;

     (3) tardiness (not at his/her assigned work station at the beginning of the first hour of the employee's work day);

     (4) interfering with the work of others; offensive personal habits which interfere with efficiency;

     (5) excessive inefficiency, to include waste, loafing, leaving job without permission, and defective workmanship;

     (6) violation of normal safety practices; failure to report a work related accident or injury; accident proneness;

     (7) improper use, or care of city property;

     (8) political soliciting during working time;

     (9) misconduct, to include lack of cooperation, contravention of civil or criminal law, and any disgraceful conduct which reflects unfavorably on the city as an employer;

23

(10)  willful and repeated failure to honor court judgments;

(11)  promiscuous behavior as related to job duties.

b.  Summary of disciplinary procedures for group one offenses.

(1)  First offense — formal counseling.

(2)  Second offense — written warning.

(3)  Third offense — final written warning or suspension without pay (requires a due process hearing prior to the effective date of the suspension without pay).

(4)  Three written warnings within a twenty-four (24) month period will constitute justification for dismissal.

1.  Group Two Offenses.

a.  Such offenses include, but are not limited to, the areas listed below:

(1)  possession and/or use of alcohol, unprescribed dangerous drugs, or similar intoxicants while in city facilities or on the job (employees other than law enforcement personnel in the line of duty);

(2)  driving a city vehicle while under the influence of intoxicants such as alcohol, unprescribed dangerous drugs, and/or prescribed drugs which induce an unsafe mental and/or physical state;

(3)  loss of a driver's license and/or driving privileges by due process of law, when the employee's job requires the operation of a motor vehicle in the performance of his/her duties;

24

(4) use of a deadly weapon and/or force on city property
(employees other than law enforcement personnel in the
line of duty);

(5) deliberate falsification of records and/or personal
misrepresentation of statements given to a supervisor,
official, the public, or board;

(6) dishonesty as related to an individual's job duties
and/or profession, or use of official position for
personal advantages;

(7) fighting, except when the employee is a victim of an
unwarranted assault;

(8) gross insubordination;

(9) conviction of a felony involving moral turpitude;

(10) theft, destruction, careless or negligent use, or
willful damage of city property or property of others;

(11) dangerous horseplay on the job;

(12) flagrant violation of safety practices that endanger
the life or health of the employee or others; serious
violation of city administrative regulations,
department rules, lawful orders or directions made or
given by a supervisor;

(13) membership in any organization which advocates the
overthrow of the government of the United States by
force or violence;

25



(14) acceptance of any consideration of value or gratuity which was given to improperly influence the employee in the performance of his/her duties;

(15) refusal to be examined by a city authorized fully licensed physician when so directed;

(16) political activities that are gross violations of federal and/or state laws;

(17) sexual harassment;

(18) sleeping on the job;

(19) incompetency or repeated inefficiency in the performance of duties;

(20) abusive personal conduct or language toward the public or fellow employees, or abusive public criticism of a superior or other city official;

(21) incapacity for proper performance of duties because of a permanent or chronic non-job related physical or mental defect;

(22) violation of any duly adopted City of Lanett personnel policy, or state/federal law or regulation governing public employment; or

(23) conduct or actions determined to be a conflict of interest as defined by state law and/or SECTION XII CONFLICTS OF INTEREST.

b. Summary of disciplinary procedures for group two offenses.

(1) The first such offense normally constitutes grounds for dismissal.

26

(2) Due process procedures as established by federal law
and/or the city's policies and procedures will be
strictly adhered to whenever any disciplinary action
such as suspension, demotion, or dismissal of a
permanent status employee is anticipated.

D.  PROCEDURES.

1.  The personnel officer is be responsible for ensuring that an
employee's rights are protected and the employee is informed in
writing by his/her department head of his/her rights.

2.  Normally, disciplinary actions will be administered uniformly
and in progressive steps in the order listed.

3.  All disciplinary actions, to include formal counseling, will be
recorded and filed in the employee's personnel record.  In no
case will a counseling or warning report be made and placed in
an employee's personnel file without his/her knowledge.

4.  Disciplinary action normally will be initiated by the
employee's immediate supervisor.  Where the offense is severe,
final action will be vested in the city manager.  In all cases,
except informal counseling, the personnel officer will be
notified of all disciplinary actions.

5.  In those disciplinary actions involving the deprivation of an
employee's rights, such as demotion, suspension without pay,
and/or involuntary dismissal, the city manager will ensure that
required due process procedures are strictly adhered to.
Before the effective date of the proposed discipline, the city
manager will provide the employee in writing: (a) the reason(s)

27



for the proposed discipline; (b) the proposed disciplinary action to be taken; and (c) the date, time and place of such action; (d) the employee's right to answer the charges orally or in writing; and (e) the employee's right to representation of his/her choice. The employee will have three (3) working days in which to respond to this notice. If the employee fails to respond to the notice, the proposed disciplinary action will be effective on the date specified. The notification and employee's response will become part of the record of the personnel review board's investigation, if the employee chooses to appeal the disciplinary action.

6. In the event of a particularly violent action or intolerable offense on the part of an employee, e.g. fighting, destruction of city property, gross insubordination, etc., the employee may be suspended with pay for up to ten (10) days by the city manager pending the completion of the due process hearing.

## SECTION VIII

### GRIEVANCE PROCEDURE

A.  GENERAL PROVISIONS.

1. A grievance is defined as either an employee's statement that a city supervisor, manager, or official is improperly or prejudicially applying, or failing to apply, the personnel rules, regulations, and/or procedures of the City of Lanett or an employee's protest of any disciplinary action taken against him/her by his/her supervisor.

28

# LOCAL GOVERNMENT RECORDS DESTRUCTION NOTICE

Date_____

To document the legal destruction of records in your agency's records disposition authority (RDA), send this form to the ADAH Government Records Division. **Records not covered by an approved RDA, or records created prior to 1900, may not be legally destroyed. If you would like ADAH to review your notice before the records are destroyed, please submit it 10 days before the scheduled destruction date.** Your office should retain a copy. If you have questions, contact the ADAH Government Records Division at (334)242-4452.

04/04

Please type. See instructions on back.

Local Government  City of Lanett

Department  Finance

Program Unit  _____

SEND ORIGINAL FORM TO:
DEPARTMENT OF ARCHIVES AND HISTORY
ATTENTION: LOCAL RECORDS SECTION
P.O. BOX 300100
MONTGOMERY, ALABAMA 36130-0100

This agency will destroy the records listed in the manner checked below:

☐ SHREDDING   ☐ LANDFILL   ☒ BURNING   ☐ RECYCLING   ☐ OTHER

☐ MICROFILMING, WITH DESTRUCTION OF THE ORIGINAL RECORDS (Note: Microfilm must meet ANSI/AIIM standards before the destruction of original records can be approved.)

DATE OF DESTRUCTION _____   CUBIC FEET DESTROYED  24

I hereby certify that the records to be destroyed are correctly represented below, that they are eligible for destruction according to a records disposition authority approved by the Local Government Records Commission, that audit and Sunset Review requirements have been fully satisfied, and that the records are not required for any pending or imminent litigation.

Signature and Title of Authorizing Official                    Name/Telephone Number of Person Completing Notice

| RDA RECORD NUMBER | NO. OF ☐ boxes ☐ reels ☐ books | RECORDS TITLE - AS SHOWN IN RDA (Include variant titles in parentheses) | DATE SPAN OF RECORDS TO BE DESTROYED | DATE LATEST RECORDS LISTED WERE AUDITED |
|---|---|---|---|---|
| | 3 | Personnel Records old old W-2's Inactive employees | 1991-1999 1983-1999 | 10/2004 |
| | | Rate sheets | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | all personnel records | 1979-1999 | |

EXHIBIT
2

The records above have been destroyed in the manner shown. Witnessed by _____   Date_____
Name/Title

### Section 13A-8-2

## Theft of property - Definition.

A person commits the crime of theft of property if he or she:

(1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his or her property;

(2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his or her property;

(3) Knowingly obtains or exerts control over property in the custody of a law enforcement agency which was explicitly represented to the person by an agent of the law enforcement agency as being stolen; or

(4) Knowingly obtains or exerts unauthorized control over any donated item left on the property of a charitable organization or in a drop box or trailer, or within 30 feet of a drop box or trailer, belonging to a charitable organization.

*(Acts 1977, No. 607, p. 812, §3201; Act 2003-355, §1; Act 2004-297, p. 449, §1.)*



&u&





# *Lanett Police Department*

P.O. Box 290
Lanett, AL 36863
Phone: (334) 644-2146 • Fax: (334) 644-5214

## *Ronald W. Doctmo*

CHIEF OF POLICE
(334) 644-5218

November 8, 2005

Lt. VanMeter,

You are hereby placed on paid administrative leave effective immediately and will remain so until the conclusion of an internal investigation into the violation of city personnel policy concerning:

1. Theft of city personnel files.

2. Unauthorized possession of city personnel files other than your own.

3. Unauthorized distribution of city personnel files other than your own.

Upon completion of this investigation you will be notified in writing of the results of the investigation and if any disciplinary action will be incurred as a result of the investigation. Disciplinary action in this investigation may range from written reprimand up to and including termination of employment with the City of Lanett on each violation.

During your leave, you will follow these guidelines:

1. You will not be at the Lanett Police Dept. unless it is to attend court or some other official function to which you have been subpoenaed or ordered to appear or to collect your paycheck. Once at the police dept. you will only remain at the police dept. as long as it requires to complete the activity for which you are present and then you are to immediately leave.

2. You are not to discuss this ongoing investigation with any member of the Lanett Police Dept. to influence their knowledge or cooperation with this Investigation.

3. As you are an employee with the Lanett Police Dept. you are still subject to being called to the police dept. or any other location as specified to respond to questions in connection with this investigation or any other matter as deemed

*With Pride We Serve*

*For The Citizens We Serve*



necessary by the City Manager or the Chief of Police.

4. You will be notified when you will be interviewed concerning this investigation and you are to be prepared to be available when notified of the interview time and date.

*Ronald W. Docimo*

Ronald W. Docimo
Chief of Police

33

I, Wendell Dean Van Meter, was riding through the back parking lot of City Hall and saw the firefighters throwing something away. I pulled over to them and ask, "What's going on?" One of the firefighters said, throwing away old files. I stepped out of my car and started looking through the files for mine. One of the firefighters said we had already thrown yours away. I saw files of some old friends, so I got them. Days later, I called them up to see if they wanted their old files from Lanett. On October 30th, I received a call from Eddy Chandler stating I was under investigation for taking the files. He also said Teddy Morris was doing the investigation. I called Chief Docimo and he stated he cannot comment on this right now. I also phoned Teddy Morris and he told me he could not comment on it right now, but he would talk to me later. I called Joel Holley after them and he stated I was under investigation and that it was about the files I took. I stated that I did have the files and that I would bring them in the next day because they were just lying on my kitchen table. On October 31, I carried the files into Joel Holley and turned them over to him. On November 9, I was put on administrative leave.

LT. Dean Van Meter

11/21/05

Invoking the Garrity Rule

EXHIBIT
5
Blumberg No. 5116

34

# LANETT POLICE DEPARTMENT

STATEMENT OF: Wendell Dean Van Meter

ADDRESS: Lanett Police Dept.

PHONE NUMBER: 334 644-2146

Date: 11/21/05

Time: 1003 Mt

Page 1 of 1 Pages

N.D.V.

I did Not Tell Anyone to Sue the City of Lanett, After Informing them that I had the Files. As far as the files I did Try to Contact (Greg Ray) Peggy Hester, Stan Ross, Ricky Price And Bryan Poe. I did give Bryan Poe And Stan Ross their files, because they belonged to them, And they were Throwing them Away. I do Not Remember who all the fireman' were over there that day, they were in the Back Parking lot. This Statement was Written For me by Det. Tedd Morris, I have Read it And it's A True And Accurate Statement to the best of my Knowledge. Wendell Dean Van Meter

EXHIBIT 6

Blumberg No. 5119

Lanett Police Department Internal Investigation

Investigator: Detective Teddy Morris

Reference: Missing personnel files

To: Chief Ron Docimo

On 10-27-2005 Chief Docimo advised me that I was to start an internal investigation into the disappearance of some City personnel files. He stated that the Fire Department had been asked by Jennie Gunnells, City Personnel / Executive Director to burn some old personnel files. He also stated that someone had allegedly removed some of the files and that they had turned up in the hands of some former city employees. He stated that the files were the property of the City of Lanett, and that they did belong to the City of Lanett. He also stated that no one had permission to take them.

Chief Docimo stated that I would need to talk the Fire Chief and several members of his department along with several members of the Lanett Police Department. He provided myself with a list of personnel that I would need to take statements from and interview during the investigation. The names that he provided to me included the following; Contessa Meacham, Hal Shelley, Willie Kirby, Neal Spears, Chuck Potts, Chief Tim Jennings, Gus Davidson, James Tines, Alissa Compton and John B. Spradlin of the Lanett Fire Department.

Chief Docimo stated that I would need to Interview Sgt. Tracy Bandy, Sgt. Darryl Hale, and P/O. Michael J. Jones, and Lt. Wendell Dean Van Meter of the Lanett Police Department.

Chief Docimo stated that I would need to interview Jennie Gunnells and City Manager Joel Holley of the Lanett City Hall.

On 10-28-2005 I Interviewed Jennie Gunnells, who is the personnel manager for the City of Lanett. She stated that on or around 09-26-2005 she had spoken to Captain Kelly Meacham about burning some personnel files for the City Hall. She also stated that were several large boxes of files that she would have to go through and that they would be ready to burn as soon as possible, she started to go through the files on 09-23-2005. She also stated that she gave Capt. Meacham a large bag of files for his shift to burn around 09-26-2005. She also stated she spoke Hal Shelley sometimes after that about burning the files.



EXHIBIT

Blumberg No. 5110

7

She stated that there were approximately nine boxes of files to be burned. She stated that she was informed by Fire Department personnel that had a house to burn and that they would burn the files when they burn the house. She stated that she spoke Hal Shelley and he told her that burning the files in the barrels was a slow process. She states that the remaining nine boxes were burned by the Fire Department around 10-04-2005 she thinks. She states that Hal Shelley told her that they had scattered the files throughout the house and set it on fire. She also states that on 10-28-2005 she had been advised by City Manager Joel Holley that attorney Don Phillips secretary brought the file that belong to Bryan Poe into the office. Statement in file……..

On 10-30-2005 Lt. Van Meter contacted me and he asked if I was investigating him I stated that I could not talk to him at that time and that I would talk to him later. He asked me again and again I said that I could not talk to him at that time, he said that "I have not committed a criminal offense", but it involves some files. I advised him that I was at Church and I could not talk right now. Statement in files…..

On 10-31-2005 I spoke with City Manager Joel Holley in his office and he turned over to me several files that had been given to him by Lt. Van Meter on this date. He stated that Lt. Van Meter had called him on the previous date and said that he had the files. Statement in file………

On 10-31-2005 I Interviewed Chief Tim Jennings at the Lanett Fire Department and he stated that they had been asked by Mrs. Gunnells to burn and destroy several boxes of personnel records. He states that C-Shift was working on the day that the house was to be burned and that Hal Shelley would be in charge and the remaining files were burned in the house by Shelley and the previously listed Fire Department personnel and Volunteers. Statement in file…..

On 10-31-2005 I Interviewed Corporal Bryan Poe at residence off Judge Bryan Road and he gave me his personnel file at that time and stated that he consulted his attorney and made copies of that file. He would not tell me where he got the files. Statement in file………

On 11-07-2005 I Interviewed Sgt. Darrell Hale here at the Lanett Police Department and he wrote in his own words that Bryan Poe had contacted him and ask if he had been contacted by anyone in reference to some files that was missing. He stated that he did not know anything and that no one had contacted. Sgt. Hale states that Poe asks Sgt. Hale if Dean had said anything to him and he said no, Poe told him that Dean probably did not trust him. Statement in file…….

On 11-07-2005 I Interviewed Sgt. Tracy Bandy here at the Lanett Police Department and he stated that Lt. Van Meter called him and ask for Stan Ross's phone number and he gave it to him. He stated that Lt. Van Meter asked him to get Stan to give him a call and that it was important. Sgt. Bandy also stated that Lt. Van Meter advised him that he had found several files and that it included Stan Ross and Bryan Poe's files. Sgt. Bandy states that he asked Sgt. Hale about the files and he stated he did not know anything and he did not want to get involved. Sgt. Bandy also stated that he advised Chief Docimo about what he had learned. Statement in file……..

On 11-05-2005 I Interviewed Hal Shelley of the Lanett Fire Department and he stated that his shift had tried to burn the files in the barrels and it was a slow process. He also stated that there were several firemen present that day and he did not recall seeing anyone remove any files, but when they were loaded onto the truck to be taken over to the house where they were to be burned he was busy doing other things in or around the fire station. He also provided myself with the names of the Fire Department personnel present on the day the house was burned. He stated that he did not see anyone take any files while he was present.     Statement in file......

On 11-05-2005 I spoke with Stan Ross via Southern Linc in reference to this Investigation and he stated to me at that time that he had his file and he would not give me a formal statement or any other details before he consult his attorney. I advised him that file was property of the City of Lanett and that I was conducting an internal Investigation and that other actions maybe taken.     Statement in file.......

On 11-05-2005 I met with Harry Hudson at the Lanett Post Office where he working at the time, via telephone I ask if I could come by there and talk to him and said yes. I went over to Post Office where I told him what I was there for and he stated that no one had contacted him in reference to his personnel file.     Statement in file.......

On 11-05-2005 I Interviewed Contessa Meacham at the Lanett Fire Department where she wrote that on or around 10-03-2005 she was advised by her supervisor that they would be burning some files for the City Hall.  She stated that they first attempted to burn the files in barrels, but later loaded them onto truck # 827 where they were taken over to the house that was to be burned.  She also states that at one time she did see Lt. Van Meter going through the files but she did not see him take any. Statement in file.......

On 11-05-2005 I Interviewed Willie Kirby at the Lanett Fire Department where he wrote that on or around 11-03-2005 he along with other personnel from the Fire Department traveled over to a house several blocks from the fire station where the files were placed throughout the house and burned.  He states he did not see anyone take any files.   Statement in file...........

On 11-08-2005 I Interviewed Chuck Potts at the Lanett Fire Department and he wrote that on or around 11-03-2005 he along with other personnel from the Fire Department attempted to burn files in barrels and it was a slow process. He states that while this was being done he did see Lt. Van Meter looking through some of the files and that he believes that he saw Lt. Van Meter leave with something in his hands after about 10 to 15 minutes. He also states that they transported the files over to the house where they were to be burned.   Statement in file........

On 11-09-2005 I spoke Ricky Price via telephone and stated that Lt. Van Meter had contacted him and Van Meter stated that the City of Lanett was destroying some personnel files and that he had his file and he wanted to know if he wanted it. Ricky said that he told him if it they were going to be thrown away he would pick it up the next time he was in Chambers County.

Ricky stated he was contacted again by Van Meter about a week later and that Van Meter said that there was an Investigation conducted in reference to the missing files, and he did not want them if it was going to be a problem give them back.  Ricky stated that he would be sending me an affidavit stating such in a few days.   Statement in file.........   Copy of affidavit in file.......(fax) (hard copy)

On 11-10-2005 I Interviewed Stan Ross at the State Fire Marshall's Office in Montgomery, Alabama, where he wrote that he received his personnel file from Lt. Van Meter.  He stated that Van Meter told him that he took the files from the back of a pick-up truck and thought that he (Stan) would like to have his file.  Statement in file..........

On 11-10-2005 I Interviewed James E. Tines at the Lanett Fire Department and he wrote that he does not recall the day that the Fire Department burned the house and that he was only there for approximately ten minutes and did not see anyone take any files.   Statement in file...........

On 11-14-2005 I Interviewed Jimmy Spears (Neal) while at the Lanett Fire Department and he states that he is not sure of the exact date but it was the day that were supposed to burn the house on North Second Avenue.  He states while burning files at the Fire Department Lt. Van Meter came up and asked what was they doing and someone said that they burning files.  He then began to go through the files and he saw Van Meter leave with what he thinks was a handful.   Statement in file..........

On 11-14-2005 I Interviewed Alissa Compton where I met her at Bridges Travel Plaza and she stated on or about 11-03-2005 she was present the day when the house was burned on North Second Avenue.  She states that she did not see anyone take any files.   Statement in file..........

On 11-15-2005 I Interviewed John B. Spradlin at the Lanett Fire Department and he states that he did not know any files was in the house until the house was set on fire nor did he see anyone take any of the files.   Statement in file...........

On 11-15-2005 I attempted to make contact with Peggy Hester at the number I was given by her x-husband, it was the Palm County Jail and they stated that she did not work for them any longer.   Statement in file........

On 11-16-2005 I received a faxed copy of an affidavit from Richard E. Price and it was placed into the file.   See file / affidavit.......

On 11-18-2005 I Interviewed Michael J. Jones at the Lanett Police Department after I was told by Chief Docimo that someone over heard him make a statement on the T.V. show Rumor's has it about the paid administrative leave of Lt. Van Meter.  He stated that he did not know of the Investigation and he was only commenting because he thought that suck for a veteran to be suspended when we need their experience on the road.   Statement in file.............

On 11-18-2005 I Interviewed Gus Davidson at the Lanett Fire Department where stated that he came up after the fire was started and he did not see any files nor did he see anyone take any files.   Statement in file...........

On 11-21-2005 I Interviewed Lt. Wendell Dean Van Meter at the Lanett Police Department where he had a pre-typed statement once I explained to him the reason why he was called to the Police Department. He states that he saw members of the Fire Department throwing away some files and ask them what was they doing, they said that throwing away some old files. He states that he asked if they had seen his files and someone said that your file had been burned. He states that he began to look through the files and got some of his old friends to give to them.

He states that Eddy Chandler later told him that he was under Investigation for taking the files and that Teddy Morris was conducting the Investigation. He states that he called Chief Docimo and Chief told him that he could not comment on that right now. He stated he then called me and I said I could not comment on that. He stated he then called Joel Holley and he told him that he was under Investigation. He stated that he City Manager Holley that he had the files and that he would return them on the next day.    Statement in file.........

I asked him if he had told anyone to sue the City of Lanett over the handling of the files and he said no. He stated that he did try to contact Greg Ray, Peggy Hester, Stan Ross, Ricky Price and Bryan Poe about their files. He further states that he gave Stan Ross and Bryan Poe their files. He stated that he does remember which firemen were present the day he took the files.    Statement in file..........

On 11-22-2005 I Interviewed Captain Kelly Meacham at the Lanett Fire Department and he stated that his shift was asked by a member of the City Hall to burn some of the files. He stated that he is unsure of the exact date but he thinks it was the last week of September. He stated that his shift did burn one large thrash bag of files and that he did not see anyone take or remove any of the files.    Statement in file.......

On 11-22-2005 I Interviewed Terry Daniels at the Lanett Fire Department and he stated that he was not sure of the date, but he was present also when the files were burned at the fire station and that he did not see anyone take or remove any files. Statement in file..........

On 11-22-2005 I Interviewed Travis Austin Bayles at the Lanett Fire Department and he stated that he was not sure of the date, but that he was present when the files was burned and that he did not see anyone take or remove any files. Statement in file..........

16

Internal Investigation Conclusion

Date: 11-22-2005

After Completing this Investigation it has been shown through these statements that Lt. Van Meter improperly obtained and disseminated the personnel files to people who are no longer employed by the City of Lanett.

According to section VII of the City of Lanett Employee Personnel Handbook group II offenses, (1) a (10), which is theft, destruction, careless or negligent use or willful damage of City property or property of others.

Detective Teddy Morris
Lanett Police Dept. / C.C.D.T.F.



CITY OF LANETT

☐ COUNSELING REPORT                                          ☐ WARNING REPORT

| EMPLOYEE  Wendell Dean VanMeter | | OCCURRENCE DATE |
| --- | --- | --- |
| | Department     Police | COUNSELING DATE |
| SUPERVISOR  Chief Ronald Docimo | Supervisor Witnessing Warning | WARNING DATE |

SITUATION IN BRIEF

Lt. VanMeter took personnel files that were to be destroyed from a vehicle located on the fire dept. parking lot. He then subsequently possessed these files at his residence and distributed the files to two former employees.

DETAILS On or about Oct. 3, 2005 Lt. VanMeter removed several personnel files from boxes of city owned files that were to be destroyed by burning them. After removing the files from the boxes without permission, they were subsequently taken to his residence. The taking of city property constitutes theft of city property.

ACTION TAKEN Termination of employment with the City of Lanett Police Dept. for violation of City of Lanett Employee Personnel Handbook Group Two Offense, Section a, Subsection (10) Theft of city property, specifically personnel files.

| SUPERVISOR | SUPERVISOR WITNESSING WARNING |
| --- | --- |
| TY MANAGER | DEPARTMENT HEAD  Chief Ronald W. Docimo |
| PERSONNEL OFFICER | EMPLOYEE |

EXHIBIT 9

CITY OF LANETT

☐ COUNSELING REPORT                                    ☐ WARNING REPORT

| EMPLOYEE  Wendell Dean VanMeter | | OCCURRENCE DATE |
| Department  Police | | COUNSELING DATE |
| SUPERVISOR  Chief Ronald Docimo | Supervisor Witnessing Warning | WARNING DATE |

SITUATION IN BRIEF

Lt. VanMeter took personnel files that were to be destroyed from a vehicle located on the fire dept. parking lot. He then subsequently possessed these files at his residence and distributed the files to two former employees.

DETAILS On or about Oct. 3, 2005 Lt. VanMeter removed several personnel files from boxes of city owned files that were to be destroyed by burning them. After removing the files from the boxes without permission, they were subsequently taken to his residence. Files belonging to Bryan Poe and Stan Ross were subsequently turned over to them.  The taking of city property, the possession of the stolen personnel files and the subsequent distribution of some of the stolen personnel files is a violation of Rules and Regulations 1.230 "Conduct Unbecoming an Officer".

ACTION TAKEN Termination of employment with the City of Lanett Police Dept. for violation of City of Lanett Police Dept. Rules and Regulations 1.230 "Conduct Unbecoming an Officer" .

| SUPERVISOR | SUPERVISOR WITNESSING WARNING |
| TTY MANAGER | DEPARTMENT HEAD   Chief Ronald W. Docimo |
| PERSONNEL OFFICER | EMPLOYEE |

EXHIBIT
10

**MAYOR**
Oscar Crawley
**CITY MANAGER**
Joel Holley
**CITY CLERK**
Deborah Daniel
**CITY TREASURER**
Jenell Lee



**COUNCIL MEMBERS**
Tony Malone
Jamie Heard
Kyle McCoy
John Duskin
Mike Yarbrough

December 2, 2005

To: Lt. Dean VanMeter
From: Joel G. Holley

Re: Disciplinary Action/Police Chief R. Docimo's Recommendation

Officer VanMeter, I am in receipt of and possession of disciplinary recommendations from your Supervisor/ Department Head, Chief Ronald Docimo. Said recommendations come to me as a result of the Chief's internal investigation into missing personnel files that were and are property of the City of Lanett.

After reviewing the City of Lanett's Personnel Handbook as well as 11-43-230 through 11-43-232, Code of Alabama, 1975, as amended, as City Manager, I will insure to you as a City of Lanett employee that maximum due process will be afforded to you. To that end, I give you this notice in writing:

1.) You as an employee of the City of Lanett Police Department are charged with violation of a "Group Two Offense-Theft of City property (see Lanett Employee Personnel Handbook, Group Two Offenses, Section A, Subsection (10), page 25 of personnel handbook.

2.) You are charged with violation of City of Lanett Police Department Rules and Regulations 1.230 "Conduct Unbecoming an Officer" Taking of City property, possession of stolen personnel files and subsequent distribution of some of the stolen files.

EXHIBIT
11
Blumberg No. 5116

You are put on notice, hereby that the Department Head has recommended termination of employment as disciplinary action. I am hereby setting a due process hearing on December 7, 2005 at 10:00 a.m. est. to allow you to meet with me, City Manager, whose responsibility includes handling disciplinary matters of City employees. You have the right to appear at this hearing in person or by representative and to address charges against you. If you have a representative present, you also must be present at the hearing. After said hearing, I, as City Manager, will give to you and or your representative my decision in writing within 24 hours.

Be noticed, that under the City Personnel Policy, you may also appeal any decision as to disciplinary action the City Manager makes. Through our Personnel Grievance Procedure, within ten (10) working days of receipt of the City Manager's decision, you have the right to appeal or elevate your grievance to the Lanett City Council. You may start the process by informing the City Manager in writing of your desire to appeal or elevate your grievance. The Council will be convened and give an answer within five (5) working days of your appeal.

To afford maximum due process, the Council, at your request, will then set a hearing to afford you further due process wherein you my present evidence on your behalf and question any witnesses the City may have or be able to call. The rules of evidence and the rules of discovery shall not apply to either of these hearings.

At any procedural step you may be present or have a representative. If you have a representative, then you too must be present. You may invoke the Garrity Rule or have such invocation continue.

You are entitled to copies of all reports, statements, forms, etc. relative to this matter. Please be aware that the New Open Meetings Law may impact any hearing before the Mayor and Council (i.e. be open to the public)

This the 2nd day of December, 2005

Joel G. Holley
City Manager, Lanett

# CERTIFICATE OF SERVICE

This is to certify that I have served a copy of this notice upon Wendall Dean VanMeter,

the employee above named on the 2nd day of December, 2005.

_Joel G. Holley_

Joel G. Holley, City Manager

Served by: _Joel G. Holley_

Time and date of service: _Friday, December 2, 2005 @ 8:40 P.M. E.T_

Signature of employee: _Wendall Dean VanMeter_

Wendall Dean VanMeter

Dec. 2, 2005
Present - Joel Holley, City Manager
         Lt. Van Meter
         Hon. Jim Ingram — Counsel for Dean Vanmeter

Location: Conference Room
          City Hall

EXHIBIT
12

_City of Lanett_
EMPLOYER

STATE OF ALABAMA

vs.

_Wendell Dean Van Meter_
EMPLOYEE

## HEARING CHECKLIST

On the time and date specified in the Notification of Disciplinary Action against the above named employee, the following questions are to be asked to said employee at the commencement of said hearing.

_Certificate of service to original_

1. Do you acknowledge your notification of this disciplinary hearing?

   __✓__ Yes          _____ No

2. Do you have specific questions regarding this procedure?

   __✓__ Yes          _____ No      _Discuss procedure at length_

3. Do you understand that you do not have to reply to the charges?

   __✓__ Yes          _____ No

4. Do you understand you have the right to reply orally and/or in writing if you wish to reply to these charges?

   __✓__ Yes          _____ No

5. Do you understand that you may request a reasonable opportunity to reply in writing if you wish to make such a reply, or that you may submit sworn affidavits in reply to these charges if you so elect?

   __✓__ Yes          _____ No

6. Do you have any reaosn at this time why this procedure should not begin?

   __✓__ Yes          _____ No

EXHIBIT

13

*City of Lanett*
*Dean Van Meter Hearing*
*Wednesday, December 07, 2005*

Present:    Dean Van Meter, City of Lanett Employee, Lieutenant Police Department
Jim C. Ingram, Attorney
William G. "Bill" Harris, Attorney
Joel Holley, City Manager
Jennie J. Gunnells, Executive Secretary/Personnel

Began:    10:15 A.M.    Ended:    11:40 A.M.

Joel Holley, City Manager, explained "Due Process Hearing" as an opportunity for an employee to be heard. Mr. Holley stated that this is a non-adversarial hearing. Mr. Holley asked if Lt. Van Meter and his attorneys received a copy of a letter dated on December 2nd, 2005. Mr. Holley had Lt. Van Meter and his attorneys sign a document certifying the receipt of the letter. Ms. Gunnells witnessed the document.

Mr. Holley stated that the charges against Lt. Van Meter came from Chief Ron Docimo. Chief Docimo recommended termination of Lt. Van Meter due to a group 2 offense, Theft of Property and Conduct unbecoming a Police Officer. Some personnel files were taken off a Fire/EMS pick up truck by Lt. Van Meter on or about October 3rd, 2005. The personnel files were then taken to Lt. Van Meter's residence. Lt. Van Meter called and notified some of these people that he had their personnel files. Bryan Poe took his personnel folder to his lawyer. Mr. Holley notified this lawyer and Mr. Poe's file came back to the city.

Mr. Holley stated that he will try to give his decision within a 24-hour period and it will be no longer than three days. An employee has five working days to appeal to the City Manager and ten working days to appeal to the Mayor and City Council. Mr. Holley stated that the Attorney General abolished all Personnel Boards so the Mayor and City Council cannot pass off their duty to anyone else.

Mr. Holley stated that the rules of evidence as lawyers know them does not apply. If Lt. Van Meter wants to elevate to the Mayor and City Council and answer will be furnished in five working days. The Mayor and Council would have to be notified of the date.

Mr. Holley explained the new "open meetings" law and certain things that cannot be done in private anymore. He noted that the Management Team wants to protect the Mayor and Council and think we could go into Executive Session if the City Attorney or the Mayor did any cross examination or asked any questions.

Mr. Holley advised Lt. Van Meter that he does not have to say anything; Lt Van Meter is under not obligation right now to respond. Mr. Holley emphasized to Lt. Van Meter to make sure you understand. Mr. Holley told Lt. Van Meter that he has to right to reply orally or in writing.

Mr. Holley explained the Garrity Rule (came out of a court case a few years ago) that what is said couldn't be used against you. This gives the employee protection. Mr. Holley assured Lt. Van Meter and his attorneys that the City of Lanett has no desire to pursue this criminally. Mr. Holley noted that Lt. Van Meter has the right to consult with his representation.

EXHIBIT
14

*City of Lanett*
*Dean Van Meter Hearing*
*Wednesday, December 07, 2005*

Mr. Holley then had a certification checklist sheet signed by Lt. Van Meter and his attorneys that all the facts had been explained and were understood.

Mr. Holley stated that Lt. Van Meter called him late one Sunday afternoon and asked if he was being investigated. Mr. Holley advised him to talk to Teddy Morris, Detective, or to Chief Docimo. Lt. Van Meter told Mr. Holley that the files were on his table at his residence and he would bring them to Mr. Holley.

Mr. Ingram stated that this is a very unfortunate incident and stated that there was no intent on Lt. Van Meter's part. Mr. Ingram stated that Lt. Van Meter assumed the property was there to be thrown away. Mr. Ingram stated that his contact of Mr. Holley shows a lack of intent. Lt. Van Meter was looking for his file. Lt. Van Meter stated that one of the Fire/EMS employees told him they had already burned his. Mr. Holley asked what Fire/EMS employee it was who said this. Lt. Van Meter replied that he did not know who it was.

Lt. Van Meter said the first he heard about the investigation was from Eddie Chandler who told him that he was under investigation for taking Personnel Files. Mr. Ingram stated that it was a bad judgment on Lt. Van Meter's part and that hindsight is 20/20. Mr. Ingram stated that Lt. Van Meter was ignorant.

Mr. Holley asked Lt. Van Meter how long he had been employed at the City of Lanett. Lt. Van Meter stated from 1978 and came back in 1982 and then came back again in 1985. Mr. Holley asked Lt. Van Meter if he had ever known any one else to be given another personnel file. Mr. Holley asked Lt. Van Meter if it crossed his mind to come and ask someone in authority about the personnel files. Lt. Van Meter stated that he was going to give the files back to the former employees. Mr. Holley asked how long he kept the files. Lt. Van Meter stated that he kept the files several weeks. Mr. Holley asked why Lt. Van Meter did not bring back the files and if he realized they were confidential. Lt. Van Meter stated that he did not look at the files.

Mr. Holley asked Lt. Van Meter if as a Police officer and a Lieutenant he wondered why the files were being thrown away. Mr. Ingram asked how long the files were on back of the Fire/EMS truck. Mr. Holley answered that the files were burned the same night in a planned house fire burn.

Mr. Holley questioned Lt. Van Meter as a Police Officer for over twenty-five years why he did not question the situation. Lt. Van Meter stated that some Fire/EMS employees said it was okay for him to take the personnel files. Mr. Holley asked again for the name of the Fire/EMS employee who told Lt. Van Meter that the files were being thrown away.

Mr. Holley asked Lt. Van Meter why he did not look in the burn barrel after being told that he file had been thrown away. Lt. Van Meter stated that he did not want to get dirty. Mr. Holley asked Lt. Van Meter why he took Mr. Holley's file and why he had not returned it to Mr. Holley. Mr. Holley asked whose files Lt. Van Meter took. Lt. Van Meter stated that he took the personnel files of Bryan Poe, Stan Ross, Peggy Hester, Ricky Price, Joel Holley and Greg Ray.

Mr. Holley asked how many of those former employees had lawsuits against the city. Lt. Van Meter said Bryan Poe and he knew of no one else. Lt. Van Meter tried to contact all of the former employees.

*City of Lanett*
*Dean Van Meter Hearing*
*Wednesday, December 07, 2005*

Mr. Holley asked Lt. Van Meter if he called and spoke with any council member. Lt. Van Meter stated that Councilman Tony Malone called him. Ms. Gunnells stated that Councilman Malone asked Chief Docimo at a Council Meeting about the missing personnel files.

Mr. Holley asked Lt. Van Meter is he had spoken with any other council member about the missing files. Lt. Van Meter stated that he had talked to Mike Yarbrough. Lt. Van Meter stated again that Eddie Chandler called him and told him he was under investigation. Lt. Van Meter stated that Lucille McCullars, former employee, called him at home after his December 2nd meeting last week and asked him if he got fired at the meeting.

Mr. Ingram asked for consideration of disciplinary action instead of termination. Mr. Holley stated that he will make a written decision and deliver it to Mr. Ingram. Mr. Holley stated that other disciplinary actions under the grievance would be demotion, suspension without pay and a written warning. Mr. Holley stated that as City Manager he has to look at the bigger picture and has to look at the overall impact of a decision as for the smooth running of the city.

Mr. Holley will give a decision no later than three days and will try for twenty-four hours. He advised Lt. Van Meter that he has ten working days to elevate his hearing to the Mayor and Council. Lt. Van Meter and his attorneys must decide on a non-adversaral hearing or a mini hearing.

Mr. Holley advised that a quorum must be present at the hearing. The hearing adjourned at 11:40 A.M.

_____

Joel G. Holley, City Manager

_____

Jennie J. Gunnells, Executive Secretary/Personnel

**MAYOR**
Oscar Crawley

**CITY MANAGER**
Joel Holley

**CITY CLERK**
Deborah Daniel

**CITY TREASURER**
Jenell Lee



**COUNCIL MEMBERS**
Tony Malone
Jamie Heard
Kyle McCoy
John Duskin
Mike Yarbrough

City of Lanett
Employer

Vs

Wendell Dean VanMeter
Employee

December 7, 2005

State of Alabama
Chambers County

RE: Decision Upon Disciplinary/Due Process Hearing

Employee VanMeter, you are hereby notified that as a result of the disciplinary/due process hearing held on the morning of December 7, 2005, in the conference room of the Lanett City Hall, wherein you were present with representative counsel, Hon. Jim C. Ingram and Hon. William G. (Bill) Harris, the following decision has been made concerning disciplinary action, to wit:

After proper written notice of specific charges, and due process procedure; and after a full due process (non adversarial) hearing wherein the employee named above was afforded full disclosure of evidence and maximum due process to be heard (with counsel present), I find the charges to be founded in fact and supported by evidence. Therefore, as City Manager for the City of Lanett, having duly considered facts and evidence from an internal investigation as well as the oral response and demeanor of the employee, as well as the best interest of the City of Lanett, I concur with the recommendation of the Department Head, Chief Ronald Docimo. Employee Wendell Dean VanMeter is hereby notified that his employment is terminated effective immediately with the City of Lanett. I concur that City property consisting of personnel files was stolen which is a violation of



EXHIBIT
15

a Class II Offense of the City Personnel Policy. Further, the taking of and possession of stolen personnel files and subsequent distribution of files is a violation of Lanett Police Department rules and regulations 1.230 "Conduct Unbecoming an Officer".

If you are dissatisfied with this decision, you may avail yourself of further due process procedures provided by the personnel policies and procedures of the City of Lanett.

You may avail yourself of appeal or grievance procedure in that within ten (10) working days of receipt of the City Manager's decision, the employee has the right to elevate his grievance to the Lanett City Council. To start the process, you should put in writing your desire to proceed and elevate your grievance to the City Council. Said writing should be filed with the City Manager. You are entitled to a non-adversarial hearing and then a separate adversarial hearing wherein you may produce witnesses and cross examine witnesses called by the City. The legal rules of evidence and discovery do not apply to any of these proceedings. The City does not have subpoena power. The "New Open Meetings Law" could impact the hearing s as discussed with your counsel.

If you so desire, after discussion with your counsel and upon stipulation by you and the City, the non-adversarial hearing before the City Council could be waived and then we would proceed with the adversarial (mini trial) hearing.

At either hearing, the City Council will furnish you with and answer within five (5) working days of this appeal.

This 7th day of December 2005.

Joel G. Holley, City Manager

## CERTIFICATE OF SERVICE

This is to certify that I have served a copy of this notice upon

Hon. Jim C. Ingram, counsel for employee Wendell Dean

VanMeter (by agreement).  Said service made by personnel service

on the ____7th____ day of December, 2005.

_Joel G. Holley_
Joel G. Holley, City Manager

Served by: _Joel G. Holley_

Time and Date of Service: _12-7-05_     _4:37 p.m CST_

Signature of employee's counsel _Jim C. Ingram_

Cc:  Personnel File
    Employee Wendell Dean VanMeter
    Hon. William G. (Bill) Harris



EXHIBIT
16

Joel G. Holley
City Manger
City of Lanett, Alabama

*Rec'd in hand fma Hon. Jim Ingram 12/7/05 4:45 P.M E.T*

Dear Mr. Holley:

Please accept this as my notice of appeal for disciplinary procedure rendered against my employment as Lieutenant with the City of Lanett Police Department.

Respectfully submitted this the ___7th___ day of December, 2005.

Wendell Dean Van Meter

As counsel for Lt. Dean Van Meter and with consent of Lt. Dean Van Meter, I hereby waive the five day (5) requirement and non adversarial hearing proceedings for the disciplinary action for employment with the City of Lanett.

James C. Ingram, Jr.
Counsel for Employee
Lt. Dean Van Meter



EXHIBIT
17

no motion

I hrs to Re-Convene

## Notice and Call of Special Meeting

Notice is hereby given a special public meeting of the City Council of the City of Lanett, to be held at the City Hall in the said City on Wednesday, December 14th, 2005, at 5:30 o'clock Local Time. This meeting is for the purpose of considering, and taking action upon "Elevation of a Grievance Process to the Mayor and Council."

Oscar Crawley, Mayor



RECEIVED
APR 1 2 2005
BY:

EXHIBIT
18

### *Consent to Holding of Meeting*

The undersigned members of the City Council of the City of Lanett, do here by acknowledge service of the Notice and Call of Special Meeting herein above set forth and do hereby consent to the holding of such meeting at such time and in such place and for the purpose set forth herein.

_____
Tony Malone

_____
Jamie Heard

_____
Kyle McCoy

_____
John Duskin

_____
Mike Yarbrough

RECEIVED
APR 1 2 2005
BY:

EXHIBIT
19
Blumberg No. 5118