```
     IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

         MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION


WENDELL DEAN VAN METER and   )
NEVA JANE VAN METER,         )
                             )
     Plaintiffs,             )
                             )       CIVIL ACTION NO.
     v.                      )        3:06cv583-MHT
                             )            (WO)
THE CITY OF LANETT,          )
ALABAMA; OSCAR CRAWLEY,      )
individually and as Mayor    )
of the City of Lanett; KYLE  )
MCCOY, individually and as   )
Lanett City Councilman;      )
JOHN DUSKIN, individually    )
and as Lanett City           )
Councilman; MIKE YARBROUGH,  )
individually and as Lanett   )
City Councilman; JOEL G.     )
HOLLEY, individually  and    )
as Lanett City Manager,      )
                             )
     Defendants.             )
```

OPINION

This suit is brought by plaintiffs Wendell Dean Van Meter and his wife, who allege that Van Meter was unlawfully terminated from the City of Lanett Police Department. They allege a violation of his rights to

free speech under the First Amendment and procedural due process under the Fourteenth Amendment, as well as state-law claims for wrongful termination, intentional infliction of emotional distress, defamation, negligence, and loss of consortium.  They named the following as defendants: the City of Lanett, Alabama; Mayor Oscar Crawley; City Manager Joel G. Holley; and three members of the city council, Kyle McCoy, John Duskin, and Mike Yarbrough.  The defendants removed the Van Meters' lawsuit from state to federal court under 28 U.S.C. § 1441, based on federal-question and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

This case is before the court on the defendants' motion for summary judgment.  For the reasons that follow, summary judgment will be granted as to the federal claims, and the state-law claims will be remanded to state court.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate if the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, at which point the burden shifts to the non-moving party to demonstrate why summary judgment would not be proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56). The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but to assess whether a genuine issue exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that

party.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. FACTUAL BACKGROUND

The following facts are uncontested.  Van Meter, a devoted police officer for 27 years, saw firefighters at the fire station emptying boxes of files into 55-gallon drums to be burned.  He asked them what they were doing, and they told him they had instructions to throw away old city personnel files.  Van Meter, thinking it would be interesting to have his file as a keepsake, started browsing through them.  His file had already been burned, but, thinking his friends might also enjoy having a memento, he spent the next 10-15 minutes looking for their files.  He took a few files and went on his way.

The police department eventually received word that files had been taken, and the pursuant investigation became focused on Van Meter.  When Van Meter learned about the investigation, he immediately contacted the relevant officials and returned the files as soon as

possible.  He persistently stated that he thought the files were just trash, but the city considered them city property and therefore considered Van Meter's action to be theft.  Van Meter was placed on administrative leave for approximately two weeks.

The Lanett Police Chief initiated termination proceedings.  Van Meter then appealed to City Manager Holley, who also ordered termination; Van Meter appealed that decision to the city council, which, after a hearing, voted 4-2 to terminate him for "theft of city property" and "conduct unbecoming an officer."  The four votes for termination came from Mayor Crawley and City Councilmen McCoy, Duskin, and Yarbrough.

Van Meter and his wife then filed this lawsuit in state court, and the defendants removed it to this federal court.

## III. DISCUSSION

### A. Federal Claims

The Van Meters assert two federal claims relying on 42 U.S.C. § 1983: first, that the defendants deprived Van Meter of freedom of speech in violation of the First Amendment, and, second, that they denied him procedural due process in violation of the Fourteenth Amendment.

#### 1. First Amendment claim

The Van Meters claim that Van Meter was terminated because he had expressed concern that Mayor Crawley had hired his girlfriend and other friends at unfairly high starting salaries. In response to these criticisms, according to the Van Meters, the Lanett Police Chief told him to stop talking about it, and City Manager Holley called Van Meter a "troublemaker." The Van Meters also claim retaliation based on Van Meter's support for Crawley's opponent in the previous mayoral election.

It is well established that a public employee "may not be discharged in retaliation for speech protected under the First Amendment." Vila v. Pardon, 494 F.3d 1334, 1339 (11th Cir. 2007). But public employees' freedom of speech is circumscribed by the need of the government, as an employer, to maintain a well-functioning workplace. Connick v. Myers, 461 U.S. 138, 151 (1983) (citing Arnett v. Kennedy, 416 U.S. 134, 168 (1974) (Powell, J., concurring) ("[A] disruptive or otherwise unsatisfactory employee can ... ultimately impair the efficiency of an office or agency.")). A public employee alleging retaliation thus must show: (1) he was speaking as a citizen on a matter of public concern; (2) his interests as a citizen outweighed the interests of the government as an employer; and (3) the speech played a substantial or motivating role in the adverse employment action. Vila, 494 F.3d at 1339. Once the employee establishes these elements, the burden shifts to the government to "prove that it would have

7

made the same adverse employment decision absent the employee's speech." Id. In the law-enforcement context, the government's burden is lessened because, "[i]n a law enforcement agency, there is a heightened need for order, loyalty, morale, and harmony, which affords a police department more latitude in responding to the speech of its officers than other government employers." Oladeinde v. City of Birmingham, 230 F.3d 1275, 1273 (11th Cir. 2000).

In speaking out against Mayor Crawley's hiring of his friends, Van Meter may well have been acting as a citizen on a matter of public concern, and he may also be able to show that his interests as a citizen outweighed the government's interests.  But the court need not reach these questions because the Van Meters are unable to show that Van Meter's speech played a substantial or motivating role in his termination.  The city had an entirely legitimate reason for terminating Van Meter, and there is no credible evidence that this reason was

pretextual. His offenses, according to the city's Employee Personnel Handbook, merited termination. Defs' Ex. 1 (Doc. No. 29-2), at 1-2. (theft "normally constitutes grounds for dismissal"). Nor do the Van Meters have evidence that the allegations against Van Meter were fabricated or groundless, as there is no dispute that he actually took the personnel files. Even if the city had been incorrect to find him guilty of the offenses that led to his termination, its decision to terminate him on the basis of those offenses was reasonable.

The Van Meters' sole support for their retaliation claim is hearsay--they state that two police officers told him that they spoke to Mayor Crawley, who said that he "wasn't going to help [Van Meter]" in challenging the termination proceedings. Moreover, these statements, even if admissible, reveal only that the mayor remained passive, as he was perfectly entitled to do, during the events preceding the city council hearing. Perhaps the

mayor did dislike Van Meter, for both his criticisms of the mayor and his political opposition, but dislike is insufficient to support a retaliation claim.

In the absence of any evidence demonstrating a causal connection between Van Meter's speech and his termination, summary judgment should be granted in favor of the defendants on the Van Meters' First Amendment claim.

## 2. Due-process claim

Procedural due process under the Fourteenth Amendment requires that, prior to termination, an employee receives "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.  To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee."  Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 546 (1985)

(internal citations omitted).  The Van Meters do not contend that Van Meter was denied any of these requirements; rather, their due-process argument is that he did not receive a hearing that was (a) before his termination and (b) unbiased.

The Van Meters' contention that Van Meter's city-council hearing was in reality a post-deprivation hearing is based on their argument that City Manager Holley terminated Van Meter outright prior to his hearing. Holley did state, in a letter to Van Meter, that Van Meter was "terminated effective immediately."  By the Van Meters' reckoning, that means Van Meter was already terminated before his city-council hearing and therefore received no pretermination hearing.  This logic, however, is incorrect.  First, because state law dictates that a city manager may not terminate police-department employees, Holley lacked the power to terminate Van Meter on the spot.[1]  See Ala. Code § 11-43-21(b)(3); see also

---

1. The Van Meters protest that the city had a
(continued...)

Altmayer v. City of Daphne, 613 So.2d 366, 369 (Ala. 1993) (city is not bound by contract made by city manager, because city manager lacked authority under statute to bind the city).  Even if Holley did improperly terminate Van Meter, that action had no lasting consequences, since on appeal the city council voted to uphold Holley's determination.  Second, Holley's letter to Van Meter made clear that Van Meter still had a right to appeal to the city council, and, thus, Van Meter was aware that he had avenues for redress remaining before his termination became final.  Third, Van Meter was not formally terminated until the city council issued its decision, five days after the hearing, and he received pay until that date.  As such, Holley's unfortunate and probably alarming phrase, "terminated effective immediately," did not mark the endpoint of his employment

---

1.  (...continued)
policy allowing Holley to terminate Van Meter and that such a policy violates state law.  That issue, however, is not relevant to his due-process claim.

with the City of Lanett, and his city-council hearing was thus properly a pretermination hearing.

The Van Meters also argue that Van Meter's hearing before the city council was biased. In support of this claim, they cite Mayor Crawley's refusal to recuse himself from the city-council proceeding and negative comments made by Crawley and Holley prior to the hearing.[2] Holley, while present at the hearing as the city manager, had no vote in the ultimate determination, and, thus, an argument that Holley's statements rendered the hearing biased is without merit. The allegations regarding Crawley, however, require more discussion.

In his deposition, Van Meter explained that he asked the mayor to recuse himself "because of me being for another candidate for mayor and him having ill feelings towards me according to the officers." Pls.' Ex. D (Doc. No. 13-10), Van Meter Depo. at 16-17. He also mentioned

---

2. These comments, both referenced in the discussion of the First Amendment claim, are Holley's "troublemaker" statement and the statements that Crawley supposedly made to two police officers about not helping Van Meter.

13

that he directly told Crawley his concerns about the mayor's decision to hire his girlfriend and other friends at unusually high starting salaries. Id. at 28. These statements do suggest that Mayor Crawley could plausibly have harbored a bias against Van Meter. But, in the administrative context, administrators are presumed to be unbiased, Schweiker v. McClure, 456 U.S. 188, 195 (1982), and overcoming that presumption is made more difficult by the fact that administrative hearings are more tolerant of partiality than judicial hearings. See Dirt, Inc. v. Mobile County Comm'n, 739 F.2d 1562, 1566 (11th Cir. 1984) (although "appearance of bias" was present, "the standards governing administrative proceedings are far more relaxed than those controlling judicial hearings"). The Van Meters' scant and indirect evidence cannot meet the burden of showing bias.

    Nevertheless, even if the Van Meters could prove sufficient bias to overcome the presumption of impartiality, they would not be able to demonstrate a

violation of procedural due process. Most simply, Crawley's non-recusal was not outcome-determinative; because the final vote was 4-2, Van Meter would have been terminated by a 3-2 vote were Crawley's vote to be excluded. An improper motive behind a single vote cannot impute an impermissible motive to the entire council, even if the other members of the majority knew about the mayor's bias or were affected by it. See Rolle v. Worth County Sch. Dist., 128 Fed.App'x 731, 733 (11th Cir. 2005) (improper motive of one board member could not be attributed to entire board to show that legitimate grounds for termination were pretextual); cf. Matthews v. Columbia County, 294 F.3d 1294, 1297, 1298 (11th Cir. 2002) (declining to impute unconstitutional motive of one member of the board to the county for the purpose of county liability).

More importantly, Crawley's bias would not be "tantamount to a demonstration that there has been a denial of procedural due process" because due process in

an employment case does not "require the state to provide an impartial decisionmaker at the pre-termination hearing." <u>McKinney v. Pate</u>, 20 F.3d 1550, 1562 (11th Cir. 1994). Indeed, the Supreme Court has stated that procedural due process is not violated when decisionmakers enter a hearing with preconceived views against the subject of the hearing, because these preconceived views do not "necessarily mean that the minds of its members were irrevocably closed on the subject." <u>Fed. Trade Comm'n v. Cement Inst.</u>, 333 U.S. 683, 701 (1948).

The government, while not obliged to provide an impartial decisionmaker, must provide a satisfactory post-deprivation remedy to avoid a violation of procedural due process. <u>McKinney</u>, 20 F.3d 1550 at 1562. Because Alabama state courts "review employment termination proceedings both to determine whether they are supported by substantial evidence and to see that the proceedings comport with procedural due process,"

16

sufficient state remedies are available.  See Bell v. City of Demopolis, 86 F.3d 191, 192 (11th Cir. 2006). Van Meter therefore received the process that he was due, and summary judgment should be granted in favor of the defendants on the Van Meters' Fourteenth Amendment claim.

### B. Supplemental State-Law Claims

The Van Meters plead state-law claims for wrongful termination, intentional infliction of emotional distress, defamation, negligence, and loss of consortium. Because summary judgment is due to be granted on their federal claims, this court "may decline to exercise supplemental jurisdiction" over state claims, since it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  The language of the statute is discretionary, but case law leans toward dismissing state-law claims in the absence of a federal claim to tether them to federal court.  See Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999) ("This

court has noted that if the federal claims are dismissed prior to trial, [precedent] strongly encourages or even requires dismissal of state claims.") (internal quotation omitted).  The court thus declines to exercise supplemental jurisdiction over the Van Meters' state-law claims.  Accordingly, the five state-law claims will be remanded to state court.  See City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 172-73 (1997); Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1350 (11th Cir. 1998).

\*\*\*

For the foregoing reasons, the court concludes that summary judgment should be granted in favor of the defendants on the Van Meters' federal claims and that their state-law claims should be remanded to state court.

An appropriate judgment will be entered.

DONE, this the 24th day of August, 2007.

                                               /s/ Myron H. Thompson  
                                      UNITED STATES DISTRICT JUDGE